# 22-2106-cv(L),

## 22-3063-cv(CON), 22-3120-cv(CON)

### United States Court of Appeals
FOR THE SECOND CIRCUIT

DIAGEO NORTH AMERICA, INC.,

*Plaintiff-Counter Defendant-
Appellee,*

v.

W.J. DEUTSCH & SONS LTD., DBA DEUTSCH FAMILY WINE & SPIRITS,
BARDSTOWN BARREL SELECTIONS LLC,

*Defendants-Counter Claimants-
Appellants.*

On Appeal from the United States District Court
for the Southern District of New York
No. 1:17-cv-4259-LLS
District Judge Louis L. Stanton

## BRIEF OF APPELLEE DIAGEO NORTH AMERICA, INC.

Gianni P. Servodidio
Susan J. Kohlmann
Jacob D. Alderdice
Allison N. Douglis
Jacquellena T. Carrero
JENNER & BLOCK LLP
1155 Avenue of the Americas
gservodidio@jenner.com
(212) 891-1600

*Counsel for Plaintiff-Counter
Defendant-Appellee Diageo
North America, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee states as follows:

Diageo North America, Inc., is a wholly owned subsidiary of its ultimate parent, Diageo plc, a public limited company organized and existing under the laws of England and Wales, and there are no other publicly held corporations owning 10% or more of Diageo North America, Inc.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES ...................................................................v

INTRODUCTION...................................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................3

STATEMENT OF FACTS .......................................................................4

I.  Factual History ...............................................................................4

    A.  The Iconic Bulleit Packaging Design.......................................4

        1.  The Launch of the Bulleit Packaging Design................4

        2.  Diageo's Extensive Advertising and Promotion of the Bulleit Packaging Design ...................................7

    B.  Deutsch's Purchase of Redemption and Packaging Redesign ...............................................................................17

    C.  Deutsch's Launch of the Diluting Redemption Packaging ...............................................................................24

II.  Procedural Background.................................................................26

    A.  Diageo Commences Litigation Against Deutsch. .................26

    B.  The Jury Finds Deutsch Diluted the Bulleit Packaging Design.................................................................26

    C.  The District Court Upholds the Jury's Verdict and Enjoins the Diluting Redemption Packaging. ......................28

    D.  The District Court Denies Deutsch's Efforts to Circumvent the Permanent Injunction. ..............................31

    E.  Deutsch Appeals.....................................................................35

SUMMARY OF ARGUMENT ...............................................................36

ARGUMENT ...................................................................... 38

I.   Substantial Evidence Supported the Jury's Determination that the Bulleit Packaging Design Was Famous to the General Consuming Public as of November 2016. ........................ 38

     A.   The Lanham Act Imposes a Multi-Factor Test for Assessing Fame. .................................................................. 39

     B.   Duration, Extent, and Geographic Reach of Advertising and Publicity .................................................. 42

          1.   Advertising Expenditures ........................................... 42

          2.   Longstanding, Nationwide Advertising Efforts .......... 44

          3.   Role in Popular Culture ............................................. 46

     C.   Sales Success ....................................................................... 47

     D.   Extent of Actual Recognition of the Bulleit Packaging Design .................................................................. 48

     E.   Registration on the Principal Register ................................ 54

     F.   Deutsch Cannot Overturn the Jury Verdict through Distortions of the Case Law. .............................................. 54

II.  Substantial Evidence Supported the Jury's Finding of Dilution Under New York Law. ................................................... 57

     A.   The Jury Was Not Required to Find that the Marks Were "Essentially the Same" in Order to Find Dilution. ............................................................................ 58

     B.   The Bulleit Packaging Design and the Diluting Redemption Packaging Are Substantially Similar. ............. 61

III. The Trial Court Correctly Charged the Jury on the Standard for Fame. ............................................................................. 69

IV.   The District Court's Rulings Interpreting the Permanent Injunction Were Well Within Its Discretion.................................. 72

A.   Sur Lee and the Non-Embossed Redemption Packaging Designs Failed to Meet the Permanent Injunction's Standard............................................ 74

B.   Third-Party Bottles Do Not Help Deutsch's Argument............................................................................ 77

CONCLUSION ............................................................................... 79

# TABLE OF AUTHORITIES

**CASES**

*AirWair International Ltd. v. ITX USA LLC*, No. 19-cv-07641, 2021 WL 5302922 (N.D. Cal. Nov. 15, 2021)......................................41

*Apple, Inc. v. Amazon.com Inc.*, No. C 11-1327, 2011 WL 2638191 (N.D. Cal. July 6, 2011)........................................................55

*Apple, Inc. v. Samsung Electronics Co.*, No. 11-cv-01846, 2012 WL 2571719 (N.D. Cal. June 30, 2012)........................................47, 50

*Barger v. First Data Corp.*, 851 F. App'x 278 (2d Cir. 2021).................70

*Board of Regents ex rel. University of Texas at Austin v. KST Electronics, Ltd.*, 550 F. Supp. 2d 657 (W.D. Tex. 2008) ..................55

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008) ................38

*Car-Freshner Corp. v. American Covers, LLC*, 980 F.3d 314 (2d Cir. 2020) ........................................................................56, 57, 60

*Car-Freshner Corp. v. American Covers, LLC*, 419 F. Supp. 3d 407 (N.D.N.Y. Aug. 7, 2019), *aff'd in part, rev'd in part*, 980 F.3d 314 (2d Cir. 2020) ........................................................................57

*Car Freshner Corp. v. D & J Distributing & Manufacturing, Inc.*, No. 14-cv-391, 2016 WL 315949 (S.D.N.Y. Jan. 8, 2016)........................................................................................................76

*Cartier Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615 (2d Cir. 2008)........................................................................................................63

*Chevron Corp. v. Donziger*, 990 F.3d 191 (2d Cir. 2021) .......................72

*Coach, Inc. v. We Care Trading Co.*, 67 F. App'x 626 (2d Cir. 2002)....................................................................................................46, 63

*DiBella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005) ....................................66

*Diesel S.p.A. v. Diesel Power Gear, LLC*, No. 19-cv-9308, 2022 WL 956223 (S.D.N.Y. Mar. 30, 2022) ................................................. 50

*E.A. Sween Co. v. A & M Deli Express, Inc.*, 787 F. App'x 780 (2d Cir. 2019) ............................................................................. 59

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir. 2000) .......................................................................... 59, 60

*Guthrie Healthcare System v. ContextMedia, Inc.*, 826 F.3d 27 (2d Cir. 2016) .......................................................................... 76, 77

*H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000 (E.D. Wis. 2018) ................................................................................ 41

*International Information Systems Security Certification Consortium, Inc. v. Security University, LLC*, 823 F.3d 153 (2d Cir. 2016) ............................................................................. 67

*Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008) ................ 44

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2d Cir. 2006) ............................................................................. 60

*Luv N' Care, Ltd. v. Regents Baby Products Corp.*, 841 F. Supp. 2d 753 (S.D.N.Y. 2012) ............................................................ 43

*Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F. Supp. 2d 671 (W.D. Ky. 2010), *aff'd*, 679 F.3d 410 (6th Cir. 2012) ............................................................................. 55

*Mirlis v. Greer*, 952 F.3d 36 (2d Cir. 2020) ........................................... 69

*Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575 (S.D.N.Y. 2009) ......................................................... 60, 61, 68, 69

*Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003) ................... 65

*Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208 (2d Cir. 1999), *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003) ............................................. 58-59

*Nabisco, Inc. v. PF Brands, Inc.*, 50 F. Supp. 2d 188 (S.D.N.Y.), *aff'd*, 191 F.3d 208 (2d Cir. 1999), *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003)................................................................ 43, 48

*Newport Electronics, Inc. v. Newport Corp.*, 56 F. App'x 63 (2d Cir. 2003)................................................................ 69, 70

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010)................................ 41, 43

*Nike, Inc. v. Nikepal International, Inc.*, No. 05-cv-1468, 2007 WL 2782030 (E.D. Cal. Sept. 18, 2007)................................ 44

*Nissan Motor Co. v. Nissa Computer Corp.*, No. 99-cv-12980, 2007 WL 9374946 (C.D. Cal. Sept. 21, 2007) ..................... 47

*Nken v. Holder*, 556 U.S. 418 (2009)........................................ 31

*Ojeda v. Metropolitan Transportation Authority*, 41 F.4th 56 (2d Cir. 2022) ................................................................ 39

*Oneida Nation of New York v. Cuomo*, 645 F.3d 154 (2d Cir. 2011)................................................................ 73

*Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577 (2d Cir. 1993) ................................................ 63

*Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158 (2d Cir. 2004), *superseded by statute as stated in Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009)................................................................ 59

*PODS Enterprises, LLC v. U-Haul International, Inc.*, 126 F. Supp. 3d 1263 (M.D. Fla. 2015)................................ 41, 54

*QS Wholesale, Inc. v. Rox Volleyball, Inc.*, No. 13-cv-0512, 2015 WL 4484219 (C.D. Cal. July 19, 2015) ..................... 48

*Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17-cv-6559, 2021 WL 363704 (S.D.N.Y. Jan. 31, 2021)................................ 47, 48

*Savin Corp. v. Savin Group*, 391 F.3d 439 (2d Cir. 2004) ............... 45, 66

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97
(2d Cir. 2009) ......................................................... 58, 59, 65

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198
(2d Cir. 2013) ................................................................. 64

*Super Duper, Inc. v. Mattel, Inc.*, 382 F. App'x 308 (4th Cir.
2010) ........................................................................... 41

*TCPIP Holding Co. v. Haar Communications, Inc.*, 244 F.3d
88 (2d Cir. 2001) ............................................................ 67

*Tolbert v. Queens College*, 242 F.3d 58 (2d Cir. 2001) ..................... 66, 67

*Truskoski v. ESPN, Inc.*, 60 F.3d 74 (2d Cir. 1995) ............................. 72

*United States v. Alfisi*, 308 F.3d 144 (2d Cir. 2002) ............................. 71

*U.S. SEC v. Payton*, 726 F. App'x 832 (2d Cir. 2018) ............................ 71

*Visa International Service Ass'n v. JSL Corp.*, 610 F.3d 1088
(9th Cir. 2010) ............................................................... 64

## STATUTES

15 U.S.C. § 1125(c)(1) ..................................................... 40

15 U.S.C. § 1125(c)(2)(A) ......................................... 40, 56, 70

15 U.S.C. § 1125(c)(2)(A)(i) ............................................... 43

15 U.S.C. § 1125(c)(2)(B) ................................................. 40

N.Y. Gen. Bus. L. § 360-*l* ........................................ 57, 58, 67

## ADMINISTRATIVE Decisions

*National Pork Board & National Pork Producers Council v.
Supreme Lobster & Seafood Co.*, 96 U.S.P.Q.2d 1479, 2010
WL 2513872 (T.T.A.B. 2010) ....................................... 41-42

*New York Yankees P'ship v. IET Products & Services, Inc.*, 114
    U.S.P.Q.2d 1497, 2015 WL 2455162 (T.T.A.B. 2015) ........................ 41

**OTHER AUTHORITIES**

3 *McCarthy on Trademarks & Unfair Competition* § 19:72,
    Westlaw (5th ed. database update Mar. 2023) ................................. 10

## INTRODUCTION

After a three-week jury trial, Defendants-Appellants Deutsch Family Wine & Spirits and Bardstown Barrel Selections LLC (collectively, "Deutsch") were found liable for diluting Plaintiff-Appellee Diageo North America, Inc.'s ("Diageo's") registered Bulleit Packaging Design Trademark and Trade Dress (the "Bulleit Packaging Design") for its Bulleit brand of American whiskey products.



JA-2483 [PX 304].

The verdict was supported by compelling evidence that: i) the Bulleit Packaging Design was an iconic, award-winning design first adopted in 1999 and used continuously since that date; ii) Diageo invested hundreds of millions of dollars in national advertising for the Bulleit Packaging Design over decades; iii) Bulleit was a top-selling whiskey brand with over half a billion dollars in sales since 1999; iv) the

Bulleit Packaging Design was featured in movies and television shows appealing to the general consuming public; and v) even Deutsch's executives admitted the Bulleit Packaging Design was extremely well known and expressed concerns about "copycat criticism" when designing their diluting product.

Deutsch challenges the sufficiency of this overwhelming evidence, impermissibly substituting its own interpretation of the evidence for the jury's; raises a meritless challenge to a single jury instruction; and asks this Court to second-guess the district court's broad discretion to interpret its permanent injunction. None of these challenges withstand scrutiny under the applicable standards of review. First, Deutsch's contention that there was "scant" evidence supporting the Bulleit Packaging Design's fame is belied by the robust trial record and rests on a warped view of the law invoking arbitrary comparisons with cherry-picked well-known marks. The jury also heard and saw a trove of evidence supporting the products' substantial similarity—from confused consumers, marketing executives, and Deutsch's own market research—none of which Deutsch meaningfully addresses.

Second, Deutsch claims that the district court erred in failing to instruct the jury "more than niche fame is required" under federal dilution law. But Deutsch's requested instruction was unnecessary, as the instruction given closely tracked the statutory text requiring fame among the "general consuming public." Deutsch offers nothing but rank speculation and waived arguments quibbling with this language.

Finally, Deutsch complains that the district court did not approve two new bottle designs under the terms of its injunction following briefing and hearings during which the district court evaluated physical specimens of the designs. Yet Deutsch fails to articulate any legal error or clearly erroneous factual finding, and instead asks this Court to conduct a *de novo* review of two-dimensional photos and accept Deutsch's self-serving characterizations over the district court's considered judgment.

The decisions should be affirmed in all respects.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether sufficient evidence supported the jury's finding that the Bulleit Packaging Design is famous under federal law.

2.     Whether sufficient evidence supported the jury's finding that the Redemption packaging dilutes the Bulleit Packaging Design under New York law.

3.     Whether the district court's charge to the jury on fame under the Lanham Act satisfies the deferential standard for review of jury instructions.

4.     Whether the district court acted within its discretion in interpreting its own injunction.

## STATEMENT OF FACTS

### I.     Factual History

#### A.     The Iconic Bulleit Packaging Design

##### 1.     The Launch of the Bulleit Packaging Design

In 1987, Tom Bulleit founded the Bulleit brand, drawing from his family history of selling whiskey on the American frontier.  JA-308:7-309:8 (Bulleit).  In 1997, Diageo's predecessor Seagram's, who had acquired the Bulleit brand from Tom, enlisted award-winning design guru Steven Sandstrom to create a new design for the overall look and feel of the Bullet bottle, label, and closure—commonly known as its "packaging."  JA-312:1-11 (Bulleit); JA-513:9-13 (Sandstrom).

Sandstrom's design goal was to create a "unique" and "iconic" packaging that would "look like nothing else" and "reflect the [brand's] … frontier whiskey heritage." JA-524:12-20 (Sandstrom); JA-314:8-14 (Bulleit). Sandstrom created a bespoke packaging design for Bulleit that Seagram's launched as the new Bulleit Packaging Design in 1999. *See* JA-317:12-13 (Bulleit).[1] It has been sold continuously in that same packaging ever since. *See* JA-328:25-329:5 (Bello).

As the jury heard, the Bulleit Packaging Design consists of the "distinctive combination" of features present in the overall appearance of the Bulleit packaging:



---

[1] Deutsch does not challenge on appeal the jury's finding that the Bulleit Packaging Design is protectable both as an unregistered mark and as a registered mark. *See* JA-7241-42.

JA-2589.

This includes the combination of the "[c]lear canteen-shaped glass bottle with rounded shoulders"; the "[e]mbossed brand name above the label" with "[a]rched text in the top line of the embossed brand name"; embossed "text divider[s]" separating text in the embossing and the label; a label with a "[b]order of parallel lines"; and a "[c]ork bottle cap with black top." JA-71 [Compl. ¶ 13]; *see also* JA-335:10-18 (Bello) (describing "the border on the label, … the unique canteen shape, … the emboss and the size and placement of the emboss, and … that black cap" and testifying that "[a]ll of that, together, is really what creates our very distinctive and unique trade dress").

Soon after its 1999 launch, the Bulleit Packaging Design began winning awards celebrating its unique design. JA-356:18-358:6, 362:3-24 (Bello); JA-540:21-542:25 (Sandstrom). Well-respected organizations singled out the Bulleit Packaging Design's overall appearance, including its distinctiveness, for awards not only in the beverage industry but across all industries. JA-356:18-358:6 (Bello); JA-540:21-542:25 (Sandstrom). The Bulleit Packaging Design also garnered press coverage

shortly after its release, singling out its "distinctive" packaging and "medicine bottle" shape. JA-6428-6433 [TX 1 at 40-45].

### 2. Diageo's Extensive Advertising and Promotion of the Bulleit Packaging Design

Since 2001, when Diageo acquired the Bulleit brand, it has continued to market Bulleit in the same award-winning packaging. JA-317:16-18 (Bulleit); JA-329:4-12 (Bello). Diageo's corporate representative and former Bulleit brand director, Edward Bello, testified that Bulleit is a "unicorn" because, unlike other consumer goods that commonly undergo packaging changes, Bulleit has "maintained its identical packaging for a very long time." JA-329:6-20 (Bello). The Bulleit Packaging Design has also been used for a variety of different kinds of Bulleit brand whiskeys—called "line extensions"—beginning with Bulleit Rye and expanding to other varieties of the original Bulleit Bourbon product. These line extensions retain the same look and feel as the original, with variations in label color denoting the different products. JA-341:3-22, 345:10-347:2 (Bello); JA-543:1-544:25 (Sandstrom).



JA-2480 [PX 303].

Since 2001, Diageo relied on the Bulleit Packaging Design's uniqueness as a potent marketing asset. *See* JA-2542 [PX 321] ("Elements of this time period are reflected in Bulleit's unique flask shape, raised glass lettering, and cork stopper. Unique packaging sets Bulleit Bourbon apart from other Premium Bourbons while reinforcing the frontier character and positioning."); JA-388:17-389:19 (Bello) (explaining that PX 321 was a Bulleit marketing plan Diageo created around 2004).

To protect its important asset, in 2004 Diageo applied to the U.S. Patent & Trademark Office ("PTO") to obtain a trademark registration for the Bulleit packaging's overall appearance, including the bottle shape, the embossed lettering, and the label's border design. JA-6445-51 [TX 1 at 57-63] (PTO application); JA-739:21-740:4, 744:12-751:8 (Basner); JA-347:10-348:20 (Bello). In 2006, the PTO approved the

registration and issued Registration Number 3,075,812 (the "'812 Registration").

Int. Cl.: 33
Prior U.S. Cls.: 47 and 49                                    Reg. No. 3,075,812
United States Patent and Trademark Office        Registered Apr. 4, 2006
Corrected                                                          OG Date July 20, 2010

TRADEMARK
PRINCIPAL REGISTER



DIAGEO NORTH AMERICA, INC. (CON-        A FEATURE OF THE MARK. THE PRO-
NECTICUT CORPORATION)                            TRUDING WORDS, BULLEIT BOURBON
801 MAIN AVE                                            FRONTIER WHISKEY, THE PROTRUD-
NORWALK, CT 06851                                     ING LINE BELOW BULLEIT BOURBON,
   OWNER OF U.S. REG. NOS. 1,903,771            AND THE FOUR PROTRUDING DOTS
AND 2,254,414.                                          BELOW FRONTIER WHISKEY ARE ALL
   NO CLAIM IS MADE TO THE EXCLU-             ALSO CLAIMED AS FEATURES OF THE
SIVE RIGHT TO USE "BOURBON" AND              MARK.
"WHISKEY", APART FROM THE MARK
AS SHOWN.
   THE MARK CONSISTS OF THREE-                   FOR: ALCOHOLIC BEVERAGES,
DIMENSIONAL CONFIGURATION OF A               NAMELY, DISTILLED SPIRITS, IN
BOTTLE THAT IS USED TO CONTAIN               CLASS 33 (U.S. CLS. 47 AND 49).
THE GOODS, AS WELL AS A LABEL
DESIGN AND PROTRUDING WORDS                    FIRST USE 2-5-1999; IN COMMERCE
AND DESIGNS. THE LABEL DESIGN               2-5-1999.
WITH RIDGED EDGES IS CLAIMED AS
                                                          SER. NO. 78-472,619, FILED 8-24-2004.

JA-2493-94 [PX 310].

The registration covers the Bulleit Packaging Design's overall appearance, as reflected in the design drawing submitted with the application and in a specimen Diageo filed with its application depicting the 750-milliliter Bulleit Bourbon bottle. *See id.*; JA-6427, 6451 [TX 1 at

39, 63].[2]  The '812 Registration has since become incontestable under Lanham Act Sections 8 and 15.  *See* JA-2493 [PX 310].

Diageo has invested extensively in advertising and promoting the Bulleit Packaging Design since acquiring Bulleit in 2001.  Diageo spent $56 million in advertising and promotion for Bulleit between July 2011 and 2016 alone, ranging from just under $3 million in Fiscal Year '12 to over $10 million per year each subsequent year, including nearly $20 million in Fiscal Year '16.  JA-2572 [PX 338]; JA-368:14-370:2 (Bello).[3] Bello also testified that Diageo invested substantially in advertising and marketing for a full decade before that period, and that the Bulleit Packaging Design was "front and center" in Diageo's promotional efforts at all times.  JA-369:1-4, 370:18-371:1, 388:2-16, 389:25-390:25 (Bello).

---

[2] Diageo disclaimed exclusive rights in the Bulleit Packaging Design's cork closure by depicting it in dashed lines in the drawing.  JA-6427-28 [TX 1 at 39-40].  It is well-settled that even if components of a mark are disclaimed, they are still protectable as part of the protectable composite mark as a whole.  *See, e.g.*, 3 *McCarthy on Trademarks & Unfair Competition* § 19:72, Westlaw (5th ed. database update Mar. 2023) ("*McCarthy*").

[3] Diageo's Fiscal Year '12 started in July 2011 and finished in July 2012, and Fiscal Year '17 spanned the latter part of 2016 and the first part of 2017.  JA-368:22-25, 394:25-395:7 (Bello).

**Print and Billboard Advertising:** The Bulleit Packaging Design has been featured in national print advertising campaigns running in national magazines like *GQ* and *Esquire* beginning in 2012, and in in-store point-of-sale advertisements during the same period and continuing through the time of trial. *See* JA-2705-13, 2716-20 [PX 340]; *see also* JA-371:9-374:1 (Bello).



JA-2716 [PX 340]. Bello testified that the representative sample of advertisements shown to the jury alone would have reached "[t]ens of millions" of consumers, and formed only a small portion of Diageo's total print advertising for the fifteen years before the launch of Redemption. JA-371:2-8, 371:19-24, 373:14-374:1 (Bello). Tens of millions of customers have also seen nationwide billboard advertisements featuring

the Bulleit Packaging Design.  JA-2721-33 [PX 341]; JA:374:10-13, 375:2-9 (Bello).

**Digital Marketing:**  Bulleit's website has reached cumulatively at least 20 million consumers since the early 2000's.  JA-377:1-18 (Bello); JA-2751-61 [PX 344].



JA-2753 [PX 344].  Diageo also promotes Bulleit through extensive social media marketing and digital advertising on national websites like *The New York Times*, *The Washington Post*, *GQ*, and *Esquire*.  JA-375:10-376:25 (Bello); JA-2734-42 [PX 342] (Instagram posts).  Over the years, at least 100 million consumers were exposed to Diageo's organic and third-party advertisements.  *See* JA-375:10-376:25 (Bello).

**Event Marketing:**  Diageo has engaged over the years in unique and creative Bulleit "event" or "experiential" marketing designed to

"bring to life" the brand.  JA-379:18-383:11 (Bello).  The jury considered evidence that Diageo's representatives visited markets around the country to promote awareness of the brand and the Bulleit Packaging Design.  JA-2949-71 [PX 473A]; JA-2972-88 [PX 474].



JA-2980 [PX 474].

As another example, since 2012, Diageo has brought the Bulleit "Woody" trailer, a Bulleit-themed mobile bar, to national sporting events including the Super Bowl, World Series, and All-Star Game; music festivals; cultural events like the Tribeca Film Festival; and local bars and liquor stores nationwide.  JA-379:18-382:9 (Bello).  This creative advertising also captures millions of additional consumer impressions through news coverage and social media promotion.  JA-382:10-384:17 (Bello) (describing other event marketing).



JA-2777 [PX 346]; JA-2766 [PX 345].  Bulleit also sponsors professional sports teams, including a "long-standing sponsorship" for the San Francisco Giants, and engages in extensive stadium advertising elsewhere.  JA-378:23-379:17 (Bello); JA-2714-15 [PX 340].

**Bulleit in Popular Culture:**  Finally, the Bulleit Packaging Design has been "extensively" featured in movies and television shows through both Diageo's own promotional efforts and unsolicited placements.  JA-385:8-387:23 (Bello).  The jury considered records documenting Bulleit's media placements and the estimated number of viewers for each.  *See* JA-2800-38 [PX 355]; JA-2839 [PX 356].  From May 2005 through November 2016, when the Diluting Redemption Packaging was released, the Bulleit Packaging Design was depicted in at least sixteen television episodes of some of the most popular shows in the country at the time, such as the TV shows *2 Broke Girls* (2016), *Suits* (2014), *Two and a Half Men* (2011), and *Deadwood* (2005), and four

movies, including *That Awkward Moment* (2014) and *Bullet to the Head* (2013) .






*See generally* JA-2800-38 [PX 355].

Bulleit's depiction in these movies and shows both reflected its fame and further developed that fame, exposing hundreds of millions to the Bulleit Packaging Design. *See id.*; JA-386:11-19, 387:7-17 (Bello). The jury also considered evidence that Bulleit was featured in third-party articles and podcasts. *See* JA-2794-97 [PX 349]; JA-2798-99 [PX 350].

**Sales Success:** As a result of Diageo's extensive advertising and promotion, Bulleit became one of the country's top-selling whiskeys. JA-4718 [DX 511] (showing Bulleit as top-four bourbon in 2016 excluding Jack Daniel's, which is a Tennessee whiskey); *see* JA-342:19-343:1, 367:18-21, 378:5-11 (Bello) (testifying that Bulleit Rye is "the largest rye whiskey on the market" and that it is the third- or fourth-largest American whiskey brand bourbon in the U.S.). Deutsch witnesses confirmed Bulleit's sales success during the relevant time period. JA-616:6-8 (Steffanci) (testimony that as of January 2016, Bulleit "was the largest rye brand in sales"); JA-989:1-4 (Kilgore) (testimony from Deutsch VP of Spirits Susan Kilgore that "at the time" Bulleit was the number one rye in the world); JA-973:1-6 (Kilgore) (Bulleit is "a pretty huge bourbon brand").

Diageo continuously sold Bulleit since it acquired the brand in 2001. For just the five years before Redemption launched, Diageo shipped between 197,000 and 1.2 million 9-liter *cases* of Bulleit each year between Fiscal Year '12 and Fiscal Year '17. JA-2941 [PX 438]; *see also*

JA-393:1-8 (Bello).[4]  From 2014 (Diageo's Fiscal Year '15) to November 2016 (Diageo's Fiscal Year '17), Diageo made over $100 million in sales each year, and surpassed $220 million in the fiscal year that the Diluting Redemption Packaging was launched.  *See* JA-2941 [PX 438].  Bulleit's national success has spurred copycats, requiring Diageo to enforce its rights in the design on two occasions prior to Redemption.  *See* JA-395:10-406:25 (Bello).[5]

## B. Deutsch's Purchase of Redemption and Packaging Redesign

Deutsch is one of the United States' five largest wine companies, with almost a billion dollars a year in revenue.  JA-594:1-4, 595:1-3 (Steffanci).  It imports and markets leading wine brands like Yellow Tail and Josh Cellars, but had a mixed track record with spirits as of 2015.  JA-594:10-23, 595:4-596:13 (Steffanci).

---

[4] As each 9-liter case contains 12 750-milliliter bottles, so approximately 2.4 million 750-milliliter bottles were shipped in Fiscal Year '12 and approximately 14.5 million bottles were shipped in Fiscal Year '17.

[5] Specifically, Diageo objected to new packaging designs for Manatawny Whiskey and for Dr. McGillicuddy's Flavored Whiskey, resulting in changes to both products' packaging.  *Compare, e.g.*, JA-3873 [DX 356], *with, e.g.*, JA-3881 [DX 364]; JA-6336 [DX 760], *with, e.g.*, JA-3548 [DX 232].

In June 2015, Deutsch announced its acquisition of Redemption whiskey, which at the time had the following distinctly modern appearance:



JA-6752-53 [TX 46]; JA-6627 [TX 19 at DFWS00047310].

This was Deutsch's first foray into American whiskey. JA-597:6-598:23 (Steffanci). From the start, Deutsch's goal was to target Bulleit—which Deutsch recognized from the outset as Redemption's "national competitor" and as having "strong packaging." JA-6535 [TX 15 at p.25]; *see also* JA-598:5-7 (Steffanci); JA-906:7-907:18 (Kilgore). Deutsch also planned to use Bulleit as a pricing and shelf placement benchmark, because they viewed it as the "leading" brand in the market at the time. *See* JA-6535 [TX 15 at p.25] ("We will USE Bulleit as the proxy to find the RIGHT accounts for Redemption, and it's who we want as our next

door NEIGHBOR on the shelf."); JA-598:8-22, 656:6-13 (Steffanci); JA-959:7-11 (Kilgore).

Deutsch believed Redemption was a must-win brand for the company.  JA-612:2-7 (Steffanci).  But initial sales fell below projections.  JA-612:8-613:11 (Steffanci).  Deutsch retained an outside market research firm to test new designs for Redemption in focus groups against Bulleit Rye and other competitors.  *See* JA-6559-79 [TX 17] (report from January 2016 focus groups).

The focus groups drove home just how much Bulleit's packaging had impacted consumers.  *See* JA-6569 [TX 17 at p.10] (report submitted by Deutsch research consultant identifying Bulleit as "a familiar face, crowd pleaser, a staple, reliable").  Indeed, Deutsch's senior executives and design team expressed amazement at how recognized, influential, and even beloved the Bulleit packaging was:

- Steffanci emailed colleagues stating: "It is amazing how much everyone loves the Bulle[i]t package and how much that influences them."  JA-2437 [PX 133]; *see* JA-618:2-619:5 (Steffanci).

- Marketing Director Jennifer Thomason, when preparing for quantitative research Deutsch later conducted, emailed: "I just want one of [our designs] to be even CLOSE to how much these consumers love Bulleit. There's pretty much no way we'll manage to do better than Bulleit, because consumers already know and love that brand …." JA-2267 [PX 71]; JA-1184:9-1185:8 (Thomason).

- Kilgore reported that the focus groups revealed that "**Bulleit** is consumers' frame of reference for Rye; Well-loved, it has shaped perceptions for rye, whiskey and craft, particularly due to its packaging." JA-2301 [PX 106 at p.5]; *see also* JA-957:6-25 (Kilgore).

Various Deutsch employees echoed these observations at trial. Steffanci admitted that "the [Bulleit] brand is so big and familiar that consumers have a high attachment to the brand." JA-616:17-617:3 (Steffanci); *see also* JA-616:25-617:6 (Steffanci) (agreeing that Diageo "did a phenomenal job building the Bulleit brand" and that packaging is part of the brand). Thomason acknowledged that she recognized "from multiple rounds of research that Bulleit was a strong package" and that "consumers loved

the Bulleit packaging." JA-1185:3-8 (Thomason). And Kilgore testified that a primary learning from the focus groups was that, due to its size, Bulleit had influenced consumer expectations so significantly. JA-956:16-957:25 (Kilgore).

Following the January 2016 focus groups, Deutsch changed the Redemption packaging from the tall, thin, modern original packaging to a new design strikingly similar to Bulleit's—the Diluting Redemption Packaging:



JA-2325 [PX 106 at p.29].

The jury heard that Deutsch relied explicitly on Bulleit throughout its design process. For example, within 24 hours of the January focus groups, Kilgore revised the "design brief" with directions to propose new bottle shapes "similar to Bulleit." JA-2235 [PX 40 at DFWS00083062]; JA-622:1-10 (Steffanci); JA-929:21-931:7 (Kilgore). Within *two weeks* of

receiving that brief, Deutsch's lead designer proposed a new design with a canteen shape, a cork closure with a black cap, and prominent arched embossing above a rectangular vintage label—the clear precursor to the Diluting Redemption Packaging. *See* JA-2240 [PX 46]; JA:1149:15-1150:10, 1151:16-25 (Thomason).

In later videotaped market research sessions played for the jury, participants commented on the similarity between this proposed Redemption design and Bulleit:

- It "looks like the Bulleit bottle," JA-6452 [TX 3] at 1:04:19-1:04:27;

- "Bulleit already does it," JA-6453 [TX 4] at 00:55:10-00:55:38;

- The proposed design is "similar in shape and spirit" to Bulleit, *id.* at 1:15:27-1:16:23;

- It is "just trying to be the Bulleit Rye bottle," JA-6454 [TX 5] at 1:07:15-1:07:31; and

- "I'm going to grab that on the shelf thinking I grabbed Bulleit, and then be annoyed that I didn't," *id.* at 1:13:53-1:14:05.

The jury heard evidence that, following these focus groups, Deutsch doubled down on bringing its new packaging design even closer to Bulleit. Deutsch employees had initially tried and failed to find a stock bottle

with the shape they were looking for. *See* JA-1160:2-5 (Thomason); JA-2876-82 [PX 392]. Deutsch therefore retained glass design company Berlin Packaging LLC to create a custom mold. JA-1160:10-12 (Thomason).

Deutsch instructed Berlin to make the overall height "closer to Bulleit" and to make the shoulder height "closer to where Bulleit is," to ensure that Redemption had the same shelf "presence" as Bulleit. JA-2272 [PX 77]; JA-1162:13-1163:8, JA-1163:13-1165:5 (Thomason); JA-6494, 6503 [TX 13 at p.2] (reflecting "[d]esire to increase OAH closer to Bulleit Bourbon"). Deutsch personnel discussed the similarities between their new design and Bulleit. *See, e.g.*, JA-2265 [PX 70] ("Based on the changes I gave [Berlin] last week, the shoulder will join the neck at about the same height as Bulleit's").

Moreover, while designing the embossing for the new Redemption design, Deutsch rejected certain designs as too obviously "[m]e [t]oo" designs that would open Redemption to "copycat criticism." JA-2257, 2259, 2261 [PX 56]; *see* JA-631:3-634:15 (Steffanci). Thomason conceded that the embossing on the Diluting Redemption Packaging does not create a significantly different commercial impression than the

embossing that had previously been rejected for raising "me too" concerns. JA-1191:16-1192:13 (Thomason).

## C. Deutsch's Launch of the Diluting Redemption Packaging

Deutsch released the Diluting Redemption Packaging in November 2016. JA-956:9-11 (Kilgore). Armed with its new packaging closely resembling Bulleit, Deutsch's brand plan reflected the goal of placing Redemption adjacent to Bulleit, "which is widely distributed." JA-2343-46 [PX 107 at pp.10-13]; JA-640:2-11 (Steffanci). As the jury saw, the plan succeeded:

 

*E.g.*, JA-2885 [PX 418]; JA-6741 [TX 34].

Unsurprisingly, following the Diluting Redemption Packaging's launch, multiple sources commented on its similarity to Bulleit, including in the first comment on Deutsch's Facebook post announcing the launch,

JA-2291 [PX 103], and in a blog post about the new packaging that Deutsch itself solicited, JA-2292-93 [PX 105].

The jury also heard from two consumers who mistakenly believed that Bulleit and Redemption were related based on the similarities in the products' overall look and feel. In one instance, one consumer called the *Diageo* customer service line to ask why "Diageo" was now using the Bulleit bottle to market Redemption. JA-2940 [PX 425] (audio recording of call); JA-423:1-425:5 (Bello). Another consumer posted on social media that he had purchased "Bulleit Redemption Bourbon" when he had in fact purchased a bottle of Redemption. JA-7030:9-11, 7032:5-15, 7037:21-7038:4 (Schuler Dep.). That consumer testified by deposition at trial that he "believed that [Redemption] was linked to the Bulleit brand" due to the striking similarities in "[t]he size and shape of the bottle, the labeling [and] the marking on the glass." JA-7038:5-7039:6 (Schuler Dep.). On cross examination, he emphasized that the shape of the products was "pretty identical." JA-7104:23-7105:2.

Diageo called a survey expert, Hal Poret, who testified that he conducted a survey finding significant evidence that consumers

associated the two products based on their similar appearance. JA-841:20-842:10, 861:9-25 (Poret).

## II. Procedural Background

### A. Diageo Commences Litigation Against Deutsch.

In June 2017, Diageo filed its Complaint against Deutsch, alleging registered and unregistered trade dress infringement under the Lanham Act and New York common law, dilution under the Lanham Act and the New York General Business Law, and unfair competition and unfair business practices under New York law. *See* JA-67 [Complaint].

In response, Deutsch filed counterclaims seeking cancellation of the '812 Registration based on alleged fraud, abandonment, and functionality. *See* JA-88 [Amended Answer]. After years of extensive discovery, motion briefing, and COVID-related delays, trial began on May 12, 2022. *See* JA-52 [May 12, 2022 Docket Entry].

### B. The Jury Finds Deutsch Diluted the Bulleit Packaging Design.

At the conclusion of Diageo's case, Deutsch moved orally under Federal Rule of Civil Procedure 50 for judgment as a matter of law on Diageo's claims. JA-1327:2-1340:24. Deutsch did not so move with respect to its counterclaims. *See id.* The district court dismissed Diageo's

claim for deceptive acts and practices under the New York General Business Law, and denied the remainder of Deutsch's motion with leave to renew at the close of evidence. *See* JA-1352:24-1353:1.

On May 27, 2022, the district court held a lengthy charging conference during which the parties were given ample opportunity to raise objections to and concerns with the court's proposed jury instructions on the record. JA-1871:1-1957:8. As relevant here, Deutsch requested adding a sentence to the fame instruction stating that "fame in a niche market is insufficient." JA-1934:2-1935:4. The court stated that the addition of a reference to a "niche market" would be "more complicating than clarifying" under the circumstances of this case. *id.* Deutsch did not otherwise object to the instructions on fame—including any use of the phrase "general consuming public"—or similarity under New York law. JA-1929:1-1935:4.

On June 1, 2022, the jury delivered a verdict in Diageo's favor on its dilution claims. JA-7241-45 [Special Verdict Form]. The jury concluded that the registered Bulleit Packaging Design is valid and famous, and that Deutsch diluted the Bulleit Packaging Design under federal and New York law. *Id.*; JA-2211:25-2213:25. The jury did not

address damages because it did not find that Deutsch's dilution was willful. JA-2214:6-8. The jury rejected Deutsch's fair use defense and its counterclaims challenging Diageo's rights in the registered Bulleit Packaging Design. JA-2211:25-2212:9, 2214:2-4. The jury did not find a likelihood of confusion. JA-2212:13-16, 2212:25-2213:3.

## C. The District Court Upholds the Jury's Verdict and Enjoins the Diluting Redemption Packaging.

Deutsch thereafter moved for judgment as a matter of law and/or a new trial under Federal Rules of Civil Procedure 50 and 59. Deutsch raised a panoply of challenges to the sufficiency of the evidence supporting the jury's dilution verdict and rejection of Deutsch's counterclaims, and several purported errors in the jury charge and evidentiary rulings. SPA-1-29 (order resolving motion).

Diageo simultaneously moved for a permanent injunction enjoining Deutsch's use of the Diluting Redemption Packaging. Deutsch opposed, arguing that an injunction was not warranted despite the jury's liability finding, and that any injunction should require only minimal changes to the Diluting Redemption Packaging such as use of a hangtag or a change to the bottle cap alone. Deutsch Mem. in Opp'n to Permanent Injunction, No. 17-CV-4259 (S.D.N.Y. Sept. 7, 2022), ECF No. 459.

On September 7, 2022, the district court rejected Deutsch's Rule 50 and 59 motions and granted Diageo's motion for a permanent injunction in a reasoned, 38-page opinion. SPA-1-38 [Permanent Injunction Order]. The court concluded the jury had before it "compelling evidence" that the Bulleit Packaging Design was nationally famous before Deutsch used the Diluting Redemption Packaging and "ample evidence of the close similarity between" the Bulleit and Redemption packaging. SPA-8-13.

The district court further held that Deutsch waived many challenges by failing to object on the record in the charging conference and that the preserved challenges lacked merit. SPA-19-28. With respect to Deutsch's renewed objection regarding the lack of a niche fame instruction, the court held that using the Lanham Act's statutory language of "general consuming public" was sufficient to "apprise the jury that it needed to consider the fame of the Bulleit Packaging Design beyond any niche market or limited set of consumers."[6] SPA-20-21.

---

[6] To the extent Deutsch contests the court's instruction referencing the "general consuming public," which perfectly tracks the statute, the district court properly recognized that Deutsch waived this argument by failing to object at trial. *See* SPA-20-21 [Permanent Injunction Order]; *see also* JA-1871:1-1957:8.

Having upheld the jury's verdict in all respects, the district court granted Diageo a Permanent Injunction enjoining Deutsch's use of the Diluting Redemption Packaging "at issue in this litigation and any other colorable imitation thereof." SPA-36-37. It directed Deutsch to "undertake a change to the Redemption glass bottle and packaging that will convey a substantially different commercial impression," SPA-37, and have no "superficial, at a glance, resemblance to the Bulleit bottle," SPA-37 n.2. The court further specified several unchallenged aspects of the packaging that Deutsch may retain, and identified the separate packaging Deutsch uses for its "upper-tier" Redemption whiskey product as an example of acceptable non-diluting packaging. SPA-37; *see* JA-6764. The district court expressly allowed the sale of the Diluting Redemption Packaging that had "already been transferred to distributors, retail stores, bars, or restaurants." SPA-36.[7]

---

[7] Contrary to Deutsch's assertion, *see* App. Br. 29 & n.7, Diageo's proposed injunction did not require Deutsch to recall bottles of Redemption that have already been sold to distributors and retailers or promotional materials already on the market. Proposed Order, No. 17-CV-4259 (S.D.N.Y. Sept. 7, 2022), ECF No. 452.

### D. The District Court Denies Deutsch's Efforts to Circumvent the Permanent Injunction.

Following entry of the Permanent Injunction, Deutsch moved to stay the injunction pending appeal. JA-61 [Docket]. The district court promptly denied Deutsch's motion "[i]n consideration of the low likelihood of success on the merits of the appeal and the substantial injury that would befall plaintiff if the injunction was stayed," but granted a limited stay to allow Deutsch to seek a stay from this Court. JA-61 [Docket]; ECF No. 8-6 [Sept. 13, 2022 Order]. This Court similarly denied that motion, finding that Deutsch had not met the standard for a stay under *Nken v. Holder*, 556 U.S. 418 (2009). ECF No. 81 [Nov. 8, 2022 Order].

At the same time, Deutsch moved in the district court for "clarification" of the Permanent Injunction. JA-61 [Docket]. Deutsch's first "clarification" motion, filed in September 2022, asked the district court to find that Deutsch's newly launched "Sur Lee" line extension of the Diluting Redemption Packaging was non-diluting. JA-61 [Docket]; JA-7304:19-7305:3. As Deutsch's promotional photos accompanying the Sur Lee release demonstrate, the Sur Lee line extension retained the canteen shape, embossing, glass mold, and overall commercial

impression used for the base-tier Diluting Redemption Packaging. JA-7246-52 [Bello Declaration]; JA-7253-56 [Bello Declaration, Exhibit 1].[8]





Unbeknownst to Diageo or the district court, Deutsch had planned the Fall 2022 release of Sur Lee well before the trial began. JA-7249 [Bello Declaration]; JA-7269-72 [Bello Declaration, Exhibit 4]. The only alterations that Deutsch undertook to the Diluting Redemption

---

[8] The rightmost bottle in the photos is the upper-tier Redemption bottle, which was not at issue in this litigation given its different commercial impression.

Packaging involved the label design and the darkened coloration of the lower portion of the bottle.

After initial and supplemental briefing and a hearing, during which the court evaluated the commercial impressions of physical specimens of the Bulleit, Redemption Sur Lee, Diluting Redemption Packaging, and Redemption upper-tier bottles, *see* JA-7304:12-15; 7310:7-23; 7320:9-7321:5, the district court denied Deutsch's motion, concluding that Sur Lee's "proposed half-step alterations to the Redemption" packaging did not comply with the Permanent Injunction. SPA-44-45 [Sur Lee Order]. Due to its continued similarity to both the Diluting Redemption Packaging and the Bulleit Packaging Design, the court held Sur Lee did not meet the requirement that there be no "superficial, at a glance" resemblance to the Bulleit Packaging Design. SPA-44. The court explained that under the Injunction "[n]o customer can be in doubt[,] nor can there be a question about the bottle's difference from that of Diageo." *Id.*

In November 2022, Deutsch filed a second motion styled as an "Emergency Motion for a Pre-Release Compliance Determination." JA-64 [Docket]. In the second motion, Deutsch proposed "four options" for

alternative Redemption packaging designs (what Deutsch now terms the "Non-Embossed Redemption Packaging") that were even more strikingly similar to the Diluting Redemption Packaging than the enjoined Sur Lee design. JA-7336-40.



*Id.*; JA-7349.

As seen above, the Non-Embossed Redemption Packaging removed the embossing and made minor changes to the label, while retaining the identical clear glass, canteen shape, and similarly positioned square paper label as the Diluting Redemption Packaging. JA-7336-40. After briefing and another hearing during which the court examined physical specimens, *see* SPA-48:4-7 (district court stating that it was "interested in seeing the actual bottles" as the "photographs do not convey the reality"); SPA-48:19-49:21, the court similarly denied Deutsch's motion

because the Non-Embossed Redemption Packaging failed to alter the packaging's overall commercial impression. SPA-74:11-75:12 [December 7, 2022 Hearing Transcript].

### E. Deutsch Appeals.

Deutsch appeals only certain portions of the district court's resolution of its post-trial motions—specifically, the district court's denial of: (1) judgment as a matter of law on fame under the Lanham Act, (2) judgment as a matter of law on New York dilution on the grounds that the parties' respective packaging is insufficiently similar, (3) a new trial for lack of a "niche fame" instruction, and (4) Deutsch's first and second motions seeking to use alternative packaging designs.[9] Deutsch does not challenge the jury's determination that the Bulleit Packaging Design is valid and protectable, the sufficiency of the evidence supporting the jury's finding of likelihood of dilution under the Lanham Act, or the terms and scope of the Permanent Injunction.

---

[9] Diageo filed a conditional cross-appeal pending the district court's resolution of the Sur Lee clarification motion, but withdrew that appeal once the district court resolved that motion.

## SUMMARY OF ARGUMENT

Deutsch cannot clear the high bar needed to overturn the jury's considered verdict by substituting its view of the evidence for the jury's. The dilution verdicts were supported by substantial evidence, the jury charge correctly and adequately presented the law, and the district court's interpretation of its own injunction was well within its wide discretion.

*First*, ample record evidence supported the jury's finding that the Bulleit Packaging Design was famous to the general consuming public. As the district court recognized, Diageo presented "compelling evidence" supporting the jury's finding of fame including, *inter alia*, more than 15 years of sales, advertising, and promotion in national channels, popular culture, and mainstream media prior to the Diluting Redemption Packaging's launch. The jury considered extensive evidence of the Bulleit Packaging Design's consumer recognition and general renown— including testimony from Deutsch's own witnesses. Although Deutsch challenges the weight of the evidence, its brief simply omits much of that compelling evidence. Deutsch also suggests that the Bulleit Packaging Design is not famous because, in Deutsch's view, it is not the equivalent

of certain other famous brands, but that is not the test for fame and is not a reason to reject the jury's verdict.

*Second*, the district court properly rejected Deutsch's argument that the Bulleit Packaging Design and Diluting Redemption Packaging are insufficiently similar to support a finding of dilution under New York law. The jury's verdict was supported by ample evidence of the Bulleit Packaging Design and Diluting Redemption Packaging's striking similarity, including presentations of the bottles side-by-side in the courtroom and evidence of third-party reactions indicating that consumers believed the products were extremely similar and associated with each other. Deutsch incorrectly suggests a higher standard than the statute and governing precedent require: although two marks must be "very" or "substantially" similar to support a finding of dilution under New York law, they do not need to be "essentially the same."

*Third*, the district court properly refused to add unnecessary and confusing verbiage proposed by Deutsch to the otherwise unobjected-to instruction tracking the statutory definition of fame: that to prove fame under the Lanham Act, Diageo had to show that the Bulleit Packaging

Design is "widely recognized by the general consuming public of the United States."

*Last*, the district court's rulings interpreting the Permanent Injunction were well within its broad discretion to fashion and enforce injunctive relief. Both the Sur Lee and Non-Embossed Redemption Packaging designs failed to convey a substantially different commercial impression, as the Permanent Injunction—which Deutsch does not challenge on appeal—mandates.

## ARGUMENT

### I. Substantial Evidence Supported the Jury's Determination that the Bulleit Packaging Design Was Famous to the General Consuming Public as of November 2016.

This Court reviews *de novo* the district court's denial of Deutsch's Rule 50 motion for judgment as a matter of law. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008). Relief is appropriate *only* if "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair[-]minded persons could not arrive at a verdict against it." *Id.* (quotation marks and alterations omitted). On review, the Court must "consider the evidence in the light most favorable to the

party against whom the motion was made and … give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." *Ojeda v. Metro. Transp. Auth.*, 41 F.4th 56, 63 (2d Cir. 2022) (citation omitted).  It "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute [its] judgment for that of the jury."  *Id.* (citation omitted).

As the district court properly concluded, "Diageo presented compelling evidence at trial that the Bulleit Packaging Design is nationally famous and a reasonable trier of fact could and did conclude that the Bulleit trade dress was famous before Deutsch used the Redemption packaging." SPA-8.

## A. The Lanham Act Imposes a Multi-Factor Test for Assessing Fame.

The Lanham Act provides a cause of action for "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness," against "another person who, at any time after the owner's mark has become famous, commences use of a mark … in commerce that is likely to cause dilution by blurring … of the famous

mark." 15 U.S.C. § 1125(c)(1).[10] This action is available "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." *Id.*

The statute further provides that a mark is "famous" if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id.* § 1125(c)(2)(A). Specifically, the statute provides that the finder of fact may "consider all relevant factors," including:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered … on the principal register.

*Id.* § 1125(c)(2)(A)(i)-(iv).

---

[10] "[D]ilution by blurring" is "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). Deutsch does not challenge the jury's finding that the Diluting Redemption Packaging generates a likelihood of dilution under the Lanham Act.

In assessing fame under this framework, courts do not set a minimum sales or advertising threshold. Applying the statutory factors, a wide variety of marks across different industries have qualified as famous for federal dilution protection. *See, e.g.*, *AirWair Int'l Ltd. v. ITX USA LLC*, No. 19-cv-07641, 2021 WL 5302922, at *1, 7-8 (N.D. Cal. Nov. 15, 2021) (Dr. Martens combat boot trade dress; permanent injunction granted after jury finding of dilution); *Super Duper, Inc. v. Mattel, Inc.*, 382 F. App'x 308, 313-14 (4th Cir. 2010) (upholding jury verdict including finding of fame for Mattel's SEE 'N SAY and THE FARMER SAYS marks); *PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1276-77 (M.D. Fla. 2015) (upholding jury finding of fame for shipping company's PODS word mark); *see also H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1042-44 (E.D. Wis. 2018) (Harley Davidson marks including "HD" and "H-D" marks); *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 321-22 (S.D.N.Y. 2010) (NYC TRIATHLON); *N.Y. Yankees P'ship v. IET Prods. & Servs., Inc.*, 114 U.S.P.Q.2d 1497, 2015 WL 2455162, at *5-8 (T.T.A.B. 2015) (THE HOUSE THAT RUTH BUILT); *Nat'l Pork Bd. & Nat'l Pork Producers*

*Council v. Supreme Lobster & Seafood Co.*, 96 U.S.P.Q.2d 1479, 2010 WL 2513872, at *16-18 (T.T.A.B. 2010) (THE OTHER WHITE MEAT).

Although Deutsch pays lip service to the requirement that the facts be construed in the light most favorable to Diageo as the prevailing party, App. Br. 43, it in fact does the opposite and omits or distorts compelling evidence presented to the jury at every turn.

## B. Duration, Extent, and Geographic Reach of Advertising and Publicity

The district court correctly concluded that evidence of Diageo's widespread and continuous advertising and promotional efforts supported the jury's fame verdict. *See* SPA-8.

### 1. Advertising Expenditures

The jury considered, though Deutsch ignores, evidence of Diageo's substantial expenditure on national advertising and promotion since 2001 featuring the Bulleit Packaging Design "front and center," Diageo's recognition of the Bulleit Packaging Design as an important marketing asset since at least 2004, and that the Bulleit Packaging Design had been on the market even longer, since 1999. *See supra* at 5-10.

Deutsch entirely ignores that long tenure of promotion, even though the statute expressly singles out "duration" as a factor in support of fame.

*See* 15 U.S.C. § 1125(c)(2)(A)(i); *Nabisco, Inc. v. PF Brands, Inc.*, 50 F. Supp. 2d 188, 203 (S.D.N.Y.) ("[E]xtended duration and high volume of use tend to make the Goldfish mark distinct and famous"), *aff'd*, 191 F.3d 208 (2d Cir. 1999), *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003); *N.Y.C. Triathlon*, 704 F. Supp. 2d at 321 (considering "ten years of exclusive use" in finding mark famous).

In addition, Deutsch attempts to brush aside Diageo's massive advertising and promotion over almost twenty years, including substantial investment before 2011 that Deutsch's brief does not acknowledge at all. *See supra* at 8, 10. None of Deutsch's cited cases suggest that the voluminous evidence of advertising and promotional expenditures, viewed most favorably to Diageo, rendered the fame verdict defective under the applicable standard of review. *See* App. Br. 45. Nor do any of the cases establish some minimum threshold of advertising expenditure required to establish fame, much less overturn a jury determination of fame. In *Luv N' Care, Ltd. v. Regents Baby Products Corp.*, the plaintiff "ple[d] *no* facts regarding their advertising and publicity of the marks of the particular products in suit." 841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012) (emphasis added). And the other cases

Deutsch relies on made fact-specific findings regarding indicia of fame, but nowhere held that a particular level of advertising expenditure was determinative of fame. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 (9th Cir. 2008); *Nike, Inc. v. Nikepal Int'l, Inc.*, No. 05-cv-1468, 2007 WL 2782030, at *5 (E.D. Cal. Sept. 18, 2007).

## 2. Longstanding, Nationwide Advertising Efforts

The jury considered evidence and testimony that Diageo advertised and promoted Bulleit through print advertising campaigns, in-store advertisements, billboards, social media, digital advertising on popular websites like *The New York Times*, sports team sponsorships, and event marketing—all well prior to the introduction of the Diluting Redemption Packaging, and all with nationwide reach. *See supra* at 10-14.

Deutsch ignores two critical facts in attempting to downplay this evidence, *see* App. Br. 43-45. *First*, the jury explicitly heard multiple times that it was seeing *representative examples*, and thus a small portion of Diageo's overall marketing. *See* testimony cited *supra* at 11-12. *Second*, although Deutsch states that no evidence established "how many people may have been exposed to those advertisements prior to the launch of the accused Redemption packaging," App. Br. 44, that is false.

Bello testified extensively to the estimated reach of different types of advertisements as tracked by Diageo's marketing agencies, showing tens and hundreds of millions of consumer impressions for Diageo's print advertisements, billboards, and digital advertising. JA-373:14-16, 374:10-13, 375:2-9, 377:1-18, 384:18-385:7 (Bello).

Deutsch also brushes aside Diageo's experiential marketing as not accompanied by "clear evidence of any larger reach or impact," App. Br. 44, but again the opposite is true: Bello testified that beyond individual events (which included major national events like the Super Bowl and World Series and extensive sports stadium advertising, *see supra* at 12-14), Diageo promotes its experiential marketing online to generate significant consumer impressions. *See* JA-382:10-384:17 (Bello).

Diageo's extensive promotion and advertisement of the award-winning Bulleit Packaging Design was therefore compelling evidence in support of fame. *See, e.g.*, *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 450 (2d Cir. 2004) (noting $20 million in advertising in one year, and that the plaintiff's "products and services are regularly featured in print advertisements, trade magazines, and tradeshow promotions" as

evidence in support of fame (citation and alterations omitted));[11] *see also Coach, Inc. v. We Care Trading Co.*, 67 F. App'x 626, 630 (2d Cir. 2002) (affirming jury verdict based on showing that trademark had "become distinctive and valuable through Coach's promotional efforts and by virtue of its upscale reputation" (citation omitted)).

### 3.    Role in Popular Culture

The jury further considered evidence that the Bulleit Packaging Design is "part of mainstream culture" and was extensively featured in at least four movies (featuring well-known celebrities like Matt Damon, Sylvester Stallone, Zac Efron, and Michael B. Jordan interacting with the Bulleit Packaging Design) and at least sixteen television episodes through November 2016, both as a result of deliberate marketing efforts by Deutsch and organically.  *See* JA-387:7-17 (Bello) JA-2800-38 [PX 355]; JA-2839 [PX 356]; *supra* at 14-15.

Deutsch asserts *ipse dixit* that these appearances are not probative of fame because some may have been paid placements and evidence of

---

[11] Unsurprisingly, the *Savin Corp.* plaintiff had higher annual gross revenues given that it sold expensive large machinery for business use rather than $25 bottles of whiskey.

television depictions of the product is not by itself sufficient to establish fame. *See* App. Br. 44. But, putting aside whether media depictions *alone* are insufficient to establish fame, they were powerful evidence of fame coupled with the other evidence the jury considered. *See Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17-cv-6559, 2021 WL 363704, at *21-22 (S.D.N.Y. Jan. 31, 2021) (report and recommendation) (basing fame determination on product's appearance in a Super Bowl commercial and "numerous music videos, television shows, and movies, such as Toy Story 4"); *see also Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2012 WL 2571719, at *7 (N.D. Cal. June 30, 2012) ("[P]op-culture references involving the brand would provide evidence of fame." (citation omitted)); *Nissan Motor Co. v. Nissa Computer Corp.*, No. 99-cv-12980, 2007 WL 9374946, at *12 (C.D. Cal. Sept. 21, 2007) (concluding that NISSAN is famous in part because cars "enjoy an iconic status in American culture").

## C.   Sales Success

Evidence of the substantial volume of Bulleit sales also strongly supports the jury's verdict. The jury heard evidence that Bulleit is the world's top selling rye whiskey, and one of the top three or four bourbons. *See supra* at 16. The jury also considered evidence that when the

Diluting Redemption Packaging was released, Diageo was selling over 14 million bottles of Bulleit, and had generated well over $500 million in revenue in a three-year span. *See supra* at 16-17; JA-2941 [PX 438].

Again, there is no minimum requirement as to what degree of sales is sufficient to support a jury verdict on fame—but, in any event, Diageo's sales numbers are on par with other sales figures supporting a finding of fame. *See, e.g.*, *Rubik's*, 2021 WL 363704, at *21 (millions of units); *Nabisco*, 50 F. Supp. 2d at 194-95, 203 (top-ranking sales and $234 million in total sales); *QS Wholesale, Inc. v. Rox Volleyball, Inc.*, No. 13-cv-0512, 2015 WL 4484219, at *5 (C.D. Cal. July 19, 2015) (denying motion under Rule 59 given evidence of $250 million in sales supporting jury verdict on fame). Deutsch's only response is to misrepresent the record by making the absurd, counterfactual claim Bulleit had "[r]elatively [m]odest" sales as of 2016 (implicitly, compared to Bulleit's even greater sales after that point). *See* App. Br. 45-46. Here, again, Deutsch cannot substitute its own view of the evidence for the jury's.

## D. Extent of Actual Recognition of the Bulleit Packaging Design

Moreover, the jury considered substantial evidence that the Bulleit Packaging Design has enjoyed widespread national recognition, further

supporting the fame verdict. As detailed above, the Bulleit Packaging Design has been recognized through spirits industry and generalist design awards ever since it was first introduced on the market. *See supra* at 6.

The jury also considered evidence and testimony from Deutsch's own witnesses regarding the extent to which the Bulleit Packaging Design influenced consumers by the time the Diluting Redemption Packaging was launched. *See, e.g.*, JA-2437 [PX 133] (March 2016 email from Steffanci regarding how "[i]t is amazing how much everyone loves the Bulle[i]t package and how much that influences them"); *see also supra* at 18-20; JA-6465 [TX 10 at DFWS00082059] ("Bulleit is the category standard" and "encapsulates all the desired aspects of whiskey"); JA-942:12-943:3 (Kilgore) (testimony that this reaction is "consistent with market leadership in any categories in terms of encapsulating the category for consumers").

Again, Deutsch entirely ignores these admissions by its own employees. Instead, Deutsch presents a litany of one-sided arguments as to why the jury should have agreed with Deutsch's litigation position that

Bulleit was non-distinctive and not widely recognized by the consuming public.

*First*, Deutsch suggests, without support, that a fame survey is required. *See* App. Br. 46-47. To the contrary, courts routinely recognize that "fame 'does not require consumer surveys or other data.'" *Diesel S.p.A. v. Diesel Power Gear, LLC*, No. 19-cv-9308, 2022 WL 956223, at *17 (S.D.N.Y. Mar. 30, 2022) (quoting *Glob. Brand Holdings, LLC v. Church & Dwight Co.*, 2017 WL 6515419, at *5 (S.D.N.Y. Dec. 19, 2017)); *Apple*, 2012 WL 2571719, at *8 ("The factors to be established for fame are non-exhaustive, so survey results are not required"). Moreover, a survey was particularly unnecessary here, given that Deutsch witnesses testified time and time again that the Bulleit Packaging Design was an exceedingly well-known mark prior to the Diluting Redemption Packaging's launch. *See supra* at 18-21.

*Second*, Deutsch attempts to portray anecdotal instances of actual confusion between Redemption and Bulleit, *see supra* at 25, as Diageo's only evidence of consumer recognition of the Bulleit packaging. *See* App. Br. 47-48. Although these statements demonstrate consumers' organic recognition of the Bulleit Packaging Design, *cf. infra* at 63-64, they are

far from the only evidence of the extent of actual recognition. *See, e.g.*, *supra* at 18-21.

*Third*, Deutsch improperly cherry-picks one portion of a Diageo marketing study to try to overturn the jury's verdict based on the totality of the evidence. *See* App. Br. 46-47. However, as the evidence before the jury made clear, the study at issue *supported* the distinctiveness and recognition of the overall appearance of the Bulleit Packaging Design. *See* JA-2840-41 [PX 357 at pp.1-2] (noting that there were "consistent mentions of the bottle through all tasks, both spontaneously and prompted with the consistent narrative of a unique bottle design," that Bulleit "has well established front of mind presence as a Bourbon," and that a consumer described Bulleit as part of a group of "established mainstays"). Bello confirmed that the portion focused on by Deutsch was a "small piece of the research" that does not reflect how consumers encounter Bulleit. *See* JA-494:23-503:13 (Bello).[12] Indeed, the jury specifically asked to view this evidence during deliberations, and

_____

[12] In context, Bello was not suggesting that 20% was the cap on consumer recognition of Bulleit, *contra* App. Br. 27; rather, he testified that even if one looked solely to that one piece of research, it supported substantial consumer recognition. JA-494:23-502:24 (Bello).

evidently determined that the one aspect of the research singled out by Deutsch did not undercut the substantial other evidence that consumers overwhelmingly associate the Bulleit Packaging Design with Bulleit. JA-2200:23-2203:6 (sending jury DX 109 and PX 357 in response to jury question).

*Fourth*, Deutsch suggests that individual elements of the Bulleit Packaging Design "were in widespread use by third parties prior to November 2016." App. Br. 47-48. As an initial matter, Deutsch fails to offer any explanation for how this point—even if true—would undercut the jury's determination that the *combination of elements* comprising the Bulleit Packaging Design was famous. Moreover, this claim was a centerpiece of Deutsch's case that the jury rejected *numerous* times: first in rejecting Deutsch's counterclaims on fraud, abandonment and functionality, then in determining that the Bulleit Packaging Design was valid and protectable, and finally in determining that the Bulleit Packaging Design is famous. JA-7241-43 [Verdict Form]. The jury heard and saw that each of the depicted products has a very different bottle shape, labeling, embossing (including a lack thereof), closure (such as colored screw-top closures), and/or colored glass, contributing to a

markedly different commercial impression from the Bulleit Packaging Design. Indeed, Deutsch witnesses conceded that several of the products depicted had different commercial impressions from Bulleit. *See* JA-1304:16-19 (Thomason) (discussing Bib & Tucker); JA-1752:23-1753:8 (Sooy) (discussing Singleton Scotch).[13]

As the district court explained in rejecting Deutsch's post-trial motions, "the jury was able to review a plethora of third-party bottles to determine whether those bottles were similar enough to the Bulleit Packaging Design to render use of the design non-exclusive," and "was within its right to credit the evidence as it did." SPA-11-12. It would not be proper to "weigh conflicting evidence of third-party bottles to overcome [the jury's] verdict." SPA-12.

---

[13] Moreover, not all of these products were in "widespread use" prior to November 2016, *contra* App. Br. 48: the Dr. McGillicuddy's schnapps packaging depicted as DX 225 was adopted around that time (JA-403:1-404:23; *see also supra* at 17 & n.5); the Manatawny Whiskey packaging depicted as DX 364 was adopted after a settlement with Diageo in 2015 that allowed a sell-off period (JA-399:1-402:16 (Bello); *supra* at 17 & n.5); and the Highland Park Thirty Year Scotch depicted as DX 307 is a very high-end, scarce scotch whiskey no longer manufactured in that packaging, and, on the rare occasions it was ever sold, it was sold in a box covering the glass bottle. *See* JA-7200:21-7201:14, 7203:4-7205:10 (Zitelli Dep.).

### E. Registration on the Principal Register

Last, the fourth and final fame factor weighs in Diageo's favor because the Bulleit Packaging Design has been registered on the United States Patent and Trademark Office's principal register since 2006 and has become incontestable. JA-2493 [PX 310]. The PTO granted registration of the Bulleit Packaging Design based on the design mark's inherently unique and distinctive nature. JA-6423-29 [TX 1 at 35-41]. The fact that the registered mark has become incontestable further supports the jury's finding of fame. *See PODS Enters.*, 126 F. Supp. 3d at 1276-78 (denying Rule 50 motion based, in part, on the mark's "incontestable status").

In sum, the district court properly refused to accept Deutsch's skewed view of the evidence and instead determined that the jury's verdict was supported by "compelling" evidence supporting each of the factors articulated in the Lanham Act. SPA-8-9.

### F. Deutsch Cannot Overturn the Jury Verdict through Distortions of the Case Law.

None of the cases upon which Deutsch relies support overturning the jury's verdict, especially given Deutsch's distortions of the record.

First, although Deutsch cites other examples of courts rejecting dilution claims, *see* App. Br. 42 (citing 4 *McCarthy* § 24:109), not one of these cases involved a court applying the high standards for overturning a *jury verdict*, and each involved a far weaker showing of fame. In *Apple, Inc. v. Amazon.com Inc.*, the court denied a <u>preliminary injunction</u> because Apple's as-of-yet unregistered "App Store" mark had only been used for over three years, other companies used the *exact* same term descriptively, and even Apple sometimes used other terms to identify it, such as "applications store" or "electronic store." No. C 11-1327, 2011 WL 2638191, at *10-11 (N.D. Cal. July 6, 2011). In *Board of Regents ex rel. University of Texas at Austin v. KST Electronics, Ltd.*, the district court granted summary judgment for the defendant because the evidence established that the University of Texas logo was prominent only within the field of college football, and no more so than many other college logos. 550 F. Supp. 2d 657, 674-79 (W.D. Tex. 2008). And, in *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F. Supp. 2d 671, 698-700 (W.D. Ky. 2010), *aff'd*, 679 F.3d 410 (6th Cir. 2012), the court made its own finding on a bench trial that the red dripping wax component of Maker's Mark's trade dress was not famous.

Deutsch does not meaningfully address the ample evidence supporting fame, which the jury was entitled to weigh in the aggregate, and in any event cites no cases overturning a jury's finding of fame. The question before the jury was not whether the Bulleit Packaging Design was comparable to a set of cherry-picked brand names Deutsch posits as the most obvious examples of famous marks. Taking all the evidence in the light most favorable to Diageo, the jury reasonably found that the Bulleit Packaging Design met the Lanham Act's standard of being "widely recognized by the general consuming public of the United States as a designation of source of the goods … of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Deutsch disagrees with the jury's conclusion, but this is not a basis for overturning its verdict.

Finally, this Court's *Car-Freshner* decision does not justify rejecting the jury's verdict. There, this Court affirmed summary judgment to the defendant based on the district court's reasoning, which included the plaintiff's inability to substantiate that any of its advertising or promotion was focused on the specific sub-brands of car freshener *fragrances* at issue in the litigation. *See Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 334 (2d Cir. 2020) (approving in relevant part

of 419 F. Supp. 3d 407, 446-48 (N.D.N.Y. Aug. 7, 2019)).  In addition, unlike the Bulleit Packaging Design, the plaintiff was unable to substantiate advertising expenditures on the specific scents at issue, and the products sold at most tens of millions of dollars annually.  *See id.* at 319; *Car-Freshner*, 419 F. Supp. 3d at 446-48.  This is a far cry from the evidence of fame presented to the jury here.

## II.    Substantial Evidence Supported the Jury's Finding of Dilution Under New York Law.

Deutsch also challenges the sufficiency of the evidence supporting the jury's finding of likelihood of dilution under New York law.  The standard of review here is the same as Deutsch's challenge to the sufficiency of the evidence supporting fame.  *See supra* at 38-39.

Deutsch's sole argument is that the Bulleit Packaging Design and Diluting Redemption Packaging are insufficiently similar to support a finding of dilution.  App. Br. 50-55.  The district court correctly rejected this argument.  SPA-12-13.

Under New York General Business Law § 360-*l*, "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair

competition[.]"  Like the Lanham Act, this statute provides that dilution may be found "notwithstanding the absence … of confusion as to the source of goods or services."  *Id.*  Unlike federal law, it does not require a showing that the mark is famous.  *Id.*; *see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc.* ("*Starbucks I*"), 588 F.3d 97, 114 (2d Cir. 2009).

A.  **The Jury Was Not Required to Find that the Marks Were "Essentially the Same" in Order to Find Dilution.**

Deutsch argues that the Bulleit Packaging Design and Diluting Redemption Packaging do not possess the requisite similarity because, in Deutsch's view, the two designs are not "essentially the same."  App. Br. 50-51.  This misstates the governing standard.  New York law simply does not require showing that two marks are "essentially the same" to support a finding of dilution.  This Court has never held that any version of the New York dilution statute required or requires consumers to view the marks as essentially the same.[14]  Nor has any New York state court.

_____

[14] In the only case from this Court cited by Deutsch on this point, *Nabisco, Inc. v. PF Brands, Inc.*, this Court did not hold that a finding that the marks was "essentially the same" was *required*.  Rather, it held that for purposes of one factor in the multi-factor assessment of dilution under federal law, the products at issue were "essentially the same color, shape, size, and taste," and so the similarity factor weighed in favor of the

Instead, this Court has recognized repeatedly that to find liability for dilution under New York law, the factfinder must determine that the marks are "very" or "substantially similar." *Playtex Prods., Inc. v. Ga.-Pac. Corp.*, 390 F.3d 158, 167 (2d Cir. 2004) (quoting *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 176 (2d Cir. 2000)), *superseded by statute on other grounds as stated in Starbucks I*, 588 F.3d at 108; *accord Starbucks I*, 588 F.3d at 114; *E.A. Sween Co. v. A & M Deli Exp., Inc.*, 787 F. App'x 780, 786 (2d Cir. 2019). This is exactly in line with how the district court instructed the jury here. JA-7240.23:520-22 [Jury Charge].[15]

Consistent with the general requirement that the marks be "very" or "substantially" similar, this Court has also held that where two marks

---

plaintiff. 191 F.3d 208, 218 (2d Cir. 1999), *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003).

[15] The district court properly instructed the jury that the marks must be "very similar," and if they are not "then there is no dilution." JA-7240.23:520-22. Deutsch challenged this instruction in its post-trial motion, but the district court determined Deutsch waived that challenge and that the court's instruction comported with this Circuit's law. SPA-22. Deutsch does not challenge the instruction on appeal, but rather attempts to revive its objection to the instructions through a back-door challenge to the jury's weighing of the evidence.

have a "high degree of similarity"—for example, the word marks "Black Ice" and "Midnight Black Ice Storm"—they possess the requisite similarity to sustain a New York dilution claim. *Car-Freshner*, 980 F.3d at 335. And, where one mark is of "sufficient similarity so that, in the mind of the consumer, the junior mark will conjure an association with the senior"—for example, "Federal Express" and "Federal Espresso"— this is a quintessential issue for the factfinder at trial. *Fed. Exp.*, 201 F.3d at 177 (citation omitted); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir. 2006) (stating that similarity for purposes of Section 360-*l* is assessed "in a similar fashion" as under federal trademark law).

This Court's prior precedent is determinative, *see supra* at 59: two marks do not need to be "essentially the same" to support a finding of dilution under New York law, but must instead be "very" or "substantially" similar.[16]

_____

[16] The "essentially the same" language relied upon by some district courts, *see, e.g.*, App. Br. 50-51, appears to have originated in a 2009 district court decision, *Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 595-96 (S.D.N.Y. 2009), citing the *McCarthy* treatise for the rule that the marks "at least be similar enough that a substantial segment of the target group of customers sees the two marks as essentially the

## B. The Bulleit Packaging Design and the Diluting Redemption Packaging Are Substantially Similar.

Deutsch does not challenge the district court's determination that "[t]he jury was … presented with extensive evidence allowing it to find that the other factors used to assess dilution under New York law also were in Diageo's favor—such as the fact that the products are identical in type and the famous nature of the Bulleit Packaging Design" under New York law. SPA-13. Deutsch solely contests substantial similarity. The district court correctly determined that there was "ample evidence of the close similarity between the Bulleit Trade Dress and the Redemption packaging." SPA-12. This evidence of similarity, coupled with demonstrated instances of consumer confusion, was sufficient to sustain a determination that the marks were substantially similar under New York law. SPA-12-13.

Deutsch simply ignores copious evidence at trial of the similarity of the parties' packaging. The jury was able to see the clear similarity for

---

same." *Id.* at 595 (quoting 4 *McCarthy* § 24:117 (2004 ed.)). However, that court still cited to the governing standard of "very" or "substantially" similar as set forth in *Playtex*.

themselves—both side-by-side at trial and in images of shelves as the products would typically be presented to consumers, surrounded by other brands that looked dissimilar from both Bulleit and Redemption. *See, e.g.*, JA-2885-88 [PX 418]; JA-6741 [TX 34]. Additional evidence confirmed the similarities, including third-party commentary on the similarity; evidence of actual confusion, including anecdotal and survey evidence showing substantial confusion; and evidence that Deutsch itself recognized similarities between the two designs. *See supra* at 21-26.

Deutsch's response is to again substitute its own view of the evidence for the jury's. Just as it attempted to do throughout trial, Deutsch identifies individual, dissected differences between the parties' respective packaging. App. Br. 52-53. But the jury heard from Diageo and Deutsch witnesses alike that the overall look and feel of a liquor brand's packaging shapes consumer perception—not any single element. For example, Bello testified that in his capacity as brand director, he "focus[es] on the totality of what the consumer is seeing" on a retail shelf or back bar and is "looking at the overall package," JA-334:5-14, and that "[a]t a glance, it's a visual" and "that overall look and feel[ ] is what is stopping a consumer at a shelf or at a bar," JA-397:24-398:6. Deutsch's

President Steffanci agreed, testifying that "the whole collective view is most impactful," JA-617:11-15, and that consumers view a package "as a whole thing," JA-707:19-24. *See also* JA-1176:16-19 (Thomason) (testimony from Thomason that the "overall package" is "a primary generator for a consumer's perception of a brand").

Deutsch's focus on individual differences also contravenes this Court's repeated recognition that trade dress must be viewed as a whole and not compartmentalized into individual elements. *See, e.g.*, *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 582 (2d Cir. 1993) ("A product's trade dress is its 'total image … includ[ing] features such as size, shape, color or color combinations, texture, [or] graphics.'" (citation omitted; alterations in original)); *see also Cartier Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 617 (2d Cir. 2008) ("A product's trade dress encompasses the overall design and appearance that make the product identifiable to consumers" (citation omitted)); *Coach*, 67 F. App'x at 628-29 (trade dress involves "elements in combination").

While Deutsch suggests that third-party witness Andrew Schuler "testified about many differences between key elements" of the parties' respective packaging, App. Br. 52-53, he ultimately testified that he

believed the products appeared to be "pretty identical" and detailed the similarities in the packaging that led him to think that. *See supra* at 25; JA-7104:23-7105:2 (Schuler Dep.). Evidence of consumer confusion, while not required to support a finding of dilution, nonetheless supports a finding of similarity. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.* ("*Starbucks II*"), 736 F.3d 198, 210-11 & n.14 (2d Cir. 2013) (stating that "[s]ource confusion may be probative of association" relating to dilution claims); *see also id.* at 212-13 (recognizing that "proof of actual association" is the most "positive [and] substantial proof" of a likelihood of dilution (citation omitted)). Indeed, the district court even recognized that the evidence of confusion in this case would support a finding that the two marks at issue were "essentially the same." SPA-12-13.

Deutsch's other arguments are unavailing. Contrary to Deutsch's suggestion, *see* App. Br. 52, a plaintiff is *not* required to present survey evidence of dilution to prevail under either New York or federal law, particularly where there is evidence of actual association. *See Starbucks II*, 736 F.3d at 212-13 (recognizing that although a survey showing actual association is probative, it is not required); *see also Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1091 (9th Cir. 2010) ("[A]

plaintiff seeking to establish a likelihood of dilution is not required to go to the expense of producing expert testimony or market surveys; it may rely entirely on the characteristics of the marks at issue.").[17] Deutsch relies on the same inapposite cases it presented to the district court, neither of which holds that a dilution survey is required to support a finding of dilution by blurring. *Starbucks I* dealt in relevant part with an otherwise unsubstantiated claim for dilution by *tarnishment*, where this Court observed that there was no other evidence that the defendant's mark was harming the plaintiff's mark's reputation. *See Starbucks I*, 588 F.3d at 110-11. And *Savin* concerned the pre-2006 federal dilution statute requiring *actual* dilution, and thus suggested that where the marks are not completely identical, other circumstantial proof was needed to show "that a defendant's use *actually* reduces the singularity of the famous mark (by, for example, reducing its selling power, as proven

---

[17] Even under the pre-2006 requirement of proof of actual dilution, the Supreme Court had held that "[i]t may well be … that direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence[.]" *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 434 (2003).

through surveys or direct financial evidence)." *Savin*, 391 F.3d at 452-53 & n.10 (emphasis added).[18]

Deutsch also cannot sidestep its high burden under Rule 50 by arguing that the jury's finding of no likelihood of confusion is inconsistent with its dilution finding. *Contra* App. Br. 53-55. To be clear, Deutsch waived any such objection by failing to object "to the [supposedly] inconsistent verdicts while the jury was still empaneled." *DiBella v. Hopkins*, 403 F.3d 102, 117 (2d Cir. 2005).[19] Regardless, the argument

---

[18] Deutsch also suggests a dilution survey is needed because the "sheer number of bottles" sold in the last six years should have generated more instances of actual confusion. *See* App. Br. 53. But a lack of confusion is not determinative with respect to dilution, as discussed below. In any event, Deutsch's reference to "more than 84 million" bottles of Bulleit and Redemption sold is misleading, App. Br. 53, as over 80 million of those bottles were Bulleit, JA-724:17-25 (Bello). The pertinent number for confusion purposes is the 3.9 million bottles of the Diluting Redemption Packaging sold. JA-2944 [PX 462]. The jury was entitled to reject Deutsch's repeated suggestion at trial that the lack of actual confusion evidence demonstrated lack of association between the products, particularly given the relatively small quantity of *Redemption* sales. *See* JA-725:22-726:6 (Bello); JA-1315:18-1316:8 (Thomason); JA-1339:1-4 (closing).

[19] Moreover, the proper remedy for an inconsistent verdict—if the challenge were preserved and valid—"would not be to enter judgment as a matter of law but rather to order a new trial." *Tolbert v. Queens Coll.*, 242 F.3d 58, 74 (2d Cir. 2001).

fails.  This Court applies a high standard in determining whether a jury verdict is inconsistent: the jury's answers must be "ineluctably" inconsistent, and if "there is a view of the case that makes the jury's answer[s] … consistent, they must be resolved that way."  *Tolbert*, 242 F.3d at 74 (citation omitted) (alterations in original).

Deutsch's argument that the jury's finding of no trademark infringement means that marks are not similar for purposes of dilution is fundamentally wrong.  Infringement and dilution are different claims, with different elements, and address different kinds of harms to brand owners.  *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 95 (2d Cir. 2001).  Indeed, New York law establishes that a factfinder can find a likelihood of dilution "notwithstanding the absence … of confusion as to the source of goods or services."  N.Y. Gen. Bus. L. § 360-*l*.  Thus, under a plain reading of the statute, it was not "ineluctably" inconsistent for the jury to find dilution without finding infringement.

Moreover, while similarity is one of the *Polaroid* factors assessing likelihood of confusion, it is black-letter law that no *Polaroid* factor is determinative.  *See, e.g.*, *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 160-61 (2d Cir. 2016).  The jury was

correctly instructed that it had discretion to weigh the factors, and could have determined that Deutsch's claimed lack of bad faith, the parties' different trade names and label information, the relative quality of Deutsch's production, the claimed sophistication of consumers, and Deutsch's arguments about the small number of examples of actual confusion undercut a finding of infringement despite the parties' packaging nonetheless being very similar. *See* JA-7240.11:255-7240.14:315. In other words, very similar packaging can be likely to blur a distinctive brand even if it does not result in confusion as to source or affiliation. It is impossible to draw a conclusion about the jury's assessment of any one *Polaroid* factor based on its finding of no likelihood of confusion.

The one district court case Deutsch cites on this point, *Miss Universe*, does not suggest otherwise. In that case, unlike here, the court expressly ruled on the similarity factor under the *Polaroid* test, finding enough difference between "Miss USA" and "Miss Asia USA" that the "similarity" factor slightly favored the defendant, in large part due to this Court's precedent finding "dissimilarity between 'Miss USA' and another mark with the structure 'Miss ----- USA.'" *Miss Universe*, 672 F. Supp.

2d at 586-87. Having already explicitly found lack of similarity, the district court then concluded that "it follows that [the defendant's mark] is not similar enough to dilute [the plaintiff's mark]" under New York law. *Id.* at 595-96. Rather than reviewing whether the evidence was sufficient to support a jury verdict, the court had already reached its own conclusion on lack of similarity.

Deutsch asks the Court to ignore reasonable explanations for the jury's reasonable conclusion that there was dilution, but not infringement, and to interpret the jury's verdict in a way that assumes the jury behaved irrationally and resolves reasonable inferences against Diageo. This Court should reject that attempt.

## III. The Trial Court Correctly Charged the Jury on the Standard for Fame.

This Court reviews *de novo* the district court's instructions to the jury.[20] *Mirlis v. Greer*, 952 F.3d 36, 44 (2d Cir. 2020). "[D]istrict courts are given wide discretion in instructing the jury," *Newport Elecs., Inc. v.*

---

[20] Deutsch's brief only seeks a new trial under Rule 59 on the grounds of the district court's purported instructional error on niche fame. Accordingly, Diageo only sets forth the standard of review for claims of instructional error.

*Newport Corp.*, 56 F. App'x 63, 65 (2d Cir. 2003), including "substantial discretion 'in the style and wording of jury instructions,'" *Barger v. First Data Corp.*, 851 F. App'x 278, 280 (2d Cir. 2021) (quoting *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 106 (2d Cir. 2001)). "[I]nstruction[s] will be deemed adequate, so long as the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." *Newport Elecs.*, 56 F. App'x at 65 (citation omitted).

Deutsch's argument that the district court exceeded its considerable discretion by not instructing that fame within a "niche market" is insufficient to establish federal dilution, and erred in denying its motion for a new trial on that ground, lacks merit.

As set forth above, a mark is famous under the Lanham Act "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A); *see supra* at 40. The district court's instruction mirrored the statutory language and Deutsch did not object to this portion of the instruction. The court instructed the jury that Diageo had to show that the Bulleit Packaging Design "is widely recognized by the

general consuming public of the United States," and then listed the four statutory fame factors that the jury may consider in making that determination. *See* JA-7240.21:471-488 [Jury Charge].

This was a proper instruction. It mirrors the statutory text, which articulates the requirement that the mark's fame must extend to all U.S. consumers and not merely a subset of the market comprised of whiskey consumers. Indeed, this Court has repeatedly recognized that "[w]here a district court's jury instructions accurately track the language and meaning of the relevant statute," it "generally will not find error." *United States v. Alfisi*, 308 F.3d 144, 149-50 (2d Cir. 2002); *see also U.S. SEC v. Payton*, 726 F. App'x 832, 836-37 (2d Cir. 2018) (finding no error when "the instruction accurately articulated the elements of the claim").

Deutsch's speculation that a niche fame instruction was needed to mitigate possible confusion that "general consuming public" could somehow mean "alcohol consuming public" is just another attempt to relitigate its waived objection. *See supra* at 29 n.6. Nevertheless, this argument lacks support in the record or common sense. No document or witness testimony referred to whiskey drinkers as the "alcohol consuming public." As used in the instruction and the statute, the import

of that phrase is clear: "consuming" modifies "public" and refers to "consumers" of goods and services. And, as set forth *supra*, the jury considered ample evidence of the Bulleit Packaging Design's prominence in national sporting events, cultural events, and popular culture. *See supra* at 11-15.

Diageo is aware of no case finding error in a district court's dilution jury charge due to lack of an instruction on niche fame, and Deutsch cites none. Indeed, Diageo is not even aware of any instance where the district court added an instruction on niche fame following an objection. Deutsch's baseless conjecture that jurors could have hypothetically misunderstood the clear statutory language routinely used in dilution jury instructions fails to meet the high standard warranting a new trial.

## IV. The District Court's Rulings Interpreting the Permanent Injunction Were Well Within Its Discretion.

On review, this Court affords a district court's interpretation of its own injunction "heavy weight." *Chevron Corp. v. Donziger*, 990 F.3d 191, 210 (2d Cir. 2021) (citation omitted). The district court's "interpretation of its order will not be disturbed 'absent a clear abuse of discretion.'" *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995) (citation omitted). Under that standard, a purely factual finding—as the district court's was

here—is "evaluated under the clearly erroneous" standard. *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (citation omitted). While not challenging the terms of the injunction itself, Deutsch contends that the district court abused or exceeded its broad discretion by declining to permit the so-called Sur Lee and Non-Embossed Redemption Packaging "redesigns." This Court should reject this contention.

Both designs were straightforwardly covered by the terms of the Permanent Injunction. The Permanent Injunction required that the new Redemption packaging be "meaningfully changed" from the Diluting Redemption Packaging, convey a "substantially different commercial impression," and bear no "superficial[] … resemblance" to the Bulleit Packaging Design "at a glance." SPA-37 & n.2. The Permanent Injunction further made clear that to effectuate such a significant change, Deutsch must meaningfully change its "glass bottle and packaging." SPA-37. This requirement was supported by ample evidence at trial, including Deusch witness testimony that "[b]ottle shape is a primary generator for brand perception." JA-1176:16-1177:3 (Thomason).

### A. Sur Lee and the Non-Embossed Redemption Packaging Designs Failed to Meet the Permanent Injunction's Standard.

Under the clear terms of the Permanent Injunction, neither Sur Lee nor the Non-Embossed Redemption Packaging designs conveyed a substantially different impression. After considering the commercial impressions of the physical specimens of the bottles, *see supra* at 33, the district court properly recognized that Sur Lee made only "half-step alterations" to the Diluting Redemption Packaging: for a new design to be compliant, "[n]o customer can be in doubt; nor can there be a question about the bottle's difference from that of Diageo." SPA-44-45 [Sur Lee Order]. Sur Lee—a pre-planned line extension created before the trial, *see supra* at 32—was designed to retain the look and feel of the Diluting Redemption Packaging. It retained the exact same canteen shape, the same prominent embossing design, and the same cork closure and black cap. JA-7246-52 [Bello Declaration]. The only alterations involved the design of the label and surface coloration of the lower portion of the bottle. Deutsch's own marketing photos submitted to the district court demonstrated that Sur Lee retained the same overall shelf presence as the Enjoined Redemption Packaging. JA-7253-56 [Bello Declaration,

Exhibit 1]. The Sur Lee bottle carried forward the Diluting Redemption Packaging's "line extension" concept, and would have continued to dilute the Bulleit Packaging Design.

Similarly, the district court properly recognized that the Non-Embossed Redemption Packaging Designs also failed to comply with the Permanent Injunction after examining the relevant physical specimens. *See supra* at 34-35. The proposed alterations removed the embossing and made minor changes to the label, but preserved the clear glass, canteen-shaped bottle and the square paper label positioned on the lower portion of the bottle. JA-7336-40. The district court determined that these changes were "not big enough" and failed to change the key components, such as bottle shape, "that the consumer immediately picks up long before the presence or absence of embossing is discernible by the eye." SPA-74:18-24.

The district court's conclusions were supported by ample evidence from Diageo and Deutsch witnesses alike that the overall look and feel of a liquor brand's packaging shapes consumer perception and purchasing decisions—not any single element. *See supra* at 62-63. Moreover, although the testimony established that the overall appearance of the

packaging is most significant, the jury also heard testimony that bottle shape has a particularly critical impact on consumer perception. *See* JA-1176:16-1177:3, JA-1231:18-1232:1 (Thomason) (testimony that bottle shape is one of the primary generators for brand perception and that when viewing a bottle on the shelf, "the shape is going to hit you first").

Trial evidence further supported that the overall look and feel of the packaging is particularly important for line extensions, where it reinforces a "billboard effect" on the shelf with a consistent look and feel. JA-346:7-13 (Bello). In light of this, by preserving key, at-a-glance elements of the Diluting Redemption Packaging, Deutsch would continue to dilute the distinctiveness of the Bulleit Packaging Design.

This Court and others have repeatedly held that a party found to have violated the Lanham Act must maintain a "safe distance" away from the enjoined conduct and the plaintiff's mark. *See Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 47 (2d Cir. 2016) (applying the safe distance rule to framing of permanent injunction); *Car Freshner Corp. v. D & J Distrib. & Mfg., Inc.*, No. 14-cv-391, 2016 WL 315949, at *2 (S.D.N.Y. Jan. 8, 2016) (applying safe distance rule following verdict of infringement and dilution). An adjudicated dilutor must thus stay

"safely away from the perimeter" of conduct that has been found to be unlawful. *Guthrie*, 826 F.3d at 47. In effect, this means that even conduct that *might* be permissible if it were being adjudicated anew may be permissibly prohibited under an injunction. This provides further support for the district court's plain exercise of its discretion.

## B. Third-Party Bottles Do Not Help Deutsch's Argument.

Deutsch's argument that third-party products highlight the differences between the Redemption "redesigns" and the Bulleit packaging, App. Br. 60-64, is flawed. Deutsch tried and failed to persuade the jury that myriad other third-party products were similar enough to the Bulleit Packaging Design to undercut its distinctiveness. *See supra* at 52-53. Deutsch cannot again point to these products to give itself cover, particularly where it has already been adjudicated to be diluting and therefore must stay a "safe distance" away from unlawful conduct. *See supra* at 76.

Regardless, there are considerably more similarities between the Redemption packaging "redesigns" and Bulleit than the other products on which Deutsch relies as supposedly conflicting with the district court's decisions. *See supra* at 52-53. For example, Deutsch's own witness

pointed out key differences between Bulleit and Bib & Tucker, such as the "more prominent" and highly detailed embossing covering the entire bottle. *See* JA-1161:9-19, JA-1304:16-24 (Thomason). Similarly, WhistlePig has a markedly different shape from both Bulleit and Redemption, further highlighting the similar canteen shapes between the parties' respective packaging. JA-4069 [DX 496]. Nor does Deutsch's misleading reliance on Dr. McGillicuddy's butterscotch schnapps, *see* App. Br. 64, support its argument given the evidence at trial that Diageo objected to whiskey products with this exact same packaging but decided to agree to McGillicuddy's continued use of the schnapps packaging since it is in a very different category than whiskey. *See supra* at 17 & n.5; JA-406:13-407:22 (Bello).

***

Accordingly, the district court's rulings on both post-judgment "redesigns" were well within its discretion and Deutsch's effort to upend those rulings should be denied.

# CONCLUSION

This Court should affirm the district court's denial of Deutsch's motions for judgment as a matter of law, a new trial, and "clarification" of the Permanent Injunction.

Respectfully submitted,

Dated: May 5, 2023                    /s/ Gianni P. Servodidio

Gianni P. Servodidio
Susan J. Kohlmann
Jacob D. Alderdice
Allison N. Douglis
Jacquellena T. Carrero
JENNER & BLOCK LLP
1155 Avenue of the Americas,
Floor 29
New York, NY 10036
gservodidio@jenner.com
(212) 891-1600

*Counsel for Plaintiff-Counter
Defendant-Appellee Diageo
North America, Inc.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies as follows:

1.      I am a member of the bar of this Court.

2.      This Brief complies with the type-volume limitation of Circuit Rule 32.1(a)(4)(A) because, according to the word count function of Microsoft Word 2016, the Brief contains 13,865 words, excluding the parts of the Brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

3.      This Brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font for the main text and for footnotes.

4.      The text of the electronic Brief is identical to the paper copies.

I understand that a material misrepresentation may result in the Court's striking the Brief and imposing sanctions. If the Court so desires, I will provide an electronic version of the Brief and/or copy of the word or line print-out.

Dated: May 5, 2023      /s/ Gianni P. Servodidio
                                           Gianni P. Servodidio

# CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2023, I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. Counsel for all parties in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: May 5, 2023

/s/ Gianni P. Servodidio
Gianni P. Servodidio